UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

ABIODUN ADELEKE,

                          Plaintiff,                   **MEMORANDUM & ORDER**
                                                     20-CV-5224 (MKB)

        v.

JAMES JOHNSON and STEVEN RIPP,

                          Defendants.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Abiodun Adeleke, proceeding pro se, commenced the above-captioned action on October 29, 2020, against Defendants James Johnson and Steven Ripp, asserting violations of his constitutional rights under 42 U.S.C. § 1983. (Compl. ¶¶ 30–35, Docket Entry No. 1.) Plaintiff filed an Amended Complaint on January 27, 2021, alleging Fourth Amendment and Fourteenth Amendment violations against Johnson and Ripp. (Am. Compl. ¶¶ 30–32, Docket Entry No. 9.) The Court construes the Amended Complaint to include causes of action under section 1983 for violation of Plaintiff's Fourth Amendment rights, as well as violations of the Fourteenth Amendment's Due Process Clause, both substantively and procedurally, and the Equal Protection Clause. *See Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (noting that courts must liberally construe papers submitted by pro se litigants "to raise the strongest arguments that they suggest" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))).

      Defendants move to dismiss the action for failure to state a claim, (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 38; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."),

Docket Entry No. 38-4),[1] and Plaintiff opposes the motion, (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s

Opp'n"), Docket Entry No. 39).  Plaintiff also moves for leave to file a second amended

complaint ("SAC") to add James Murphy as a defendant and to add search warrants as evidence

to support the SAC (the "Motion"),[2] (Pl.'s Mot. for Leave to File SAC ("Pl.'s Mot."), Docket

Entry No. 34; Pl.'s Letter dated Sept. 17, 2021, Docket Entry No. 48), and Defendants oppose

the Motion, (Defs.' Resp. dated Sept. 8, 2021 ("Defs.' Resp."), Docket Entry No. 47).  In the

SAC, Plaintiff also names John Doe and "Hemberger," a police officer identified with Badge

#6204, as Defendants, in addition to Johnson, Ripp, and Murphy.  (SAC ¶ 4.)

---

[1] Defendants attach Plaintiff's Certificate of Disposition to their motion.  (*See* Certificate of Disposition, annexed to Defs.' Mot. as Ex. A, Docket Entry No. 38-3.)  Defendants also annex Plaintiff's Notice of Appeal, dated January 20, 2020, and a search warrant for Plaintiff's four cell phones dated June 11, 2018, to their letter dated February 18, 2022.  (*See* Notice of Appeal, annexed to Defs.' Letter dated Feb. 18, 2022, Docket Entry No. 51-1; Search Warrant, annexed to Defs.' Letter dated Feb. 18, 2022, Docket Entry No. 51-3.)  The Court takes judicial notice of all three documents.  A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998).  "[J]udicial notice may be taken of public records, including 'arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition.'"  *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2017 WL 9485714, at *3 (E.D.N.Y. Jan. 12, 2017) (quoting *Harris v. Nassau County*, No. 13-CV-4728, 2016 WL 3023265, at *3 (E.D.N.Y. May 23, 2016) (collecting cases)), *report and recommendation adopted*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017); *see also, e.g.*, *Bristol v. Nassau County*, 685 F. App'x 26, 28 (2d Cir. 2017) (affirming district court's decision to take judicial notice of decisions in related state criminal proceedings).  Accordingly, the Court takes judicial notice of Plaintiff's conviction of, *inter alia*, several counts of sex trafficking and promoting prostitution in Suffolk County, resulting in a sentence of twenty-five years with post-release parole supervision of twenty years; his Notice of Appeal; and the search warrant for Plaintiff's cell phones, dated June 11, 2018.

[2] Because at the motion to dismiss stage all factual allegations in the Complaint are accepted as true, Plaintiff does not need to provide any evidence, including documents from Defendants, to oppose Defendants' motion.  *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).  Although Defendants initially noted that Plaintiff had not filed his proposed SAC, (Defs.' Resp. dated June 22, 2021, Docket Entry No. 36; Defs.' Resp. dated July 9, 2021, Docket Entry No. 40), Plaintiff has since done so, (SAC, Docket Entry No. 46).

For the reasons set forth below, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion to further amend the Amended Complaint as currently filed.  The Court grants Plaintiff leave to file an amended complaint with allegations supporting his procedural due process claim within thirty days from the filing of this Memorandum and Order.

## I.   Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

### a.   Factual background

#### i.   May 19, 2018 arrest

On May 19, 2018, Plaintiff was stopped by Suffolk County Police Department ("SCPD") Officer Steven Ripp.  (Am. Compl. ¶ 5.)  Officer Ripp alleged that he was responding to a "call of trespassing within an abandoned house."  (*Id.*)  He requested identification, and Plaintiff handed the officer his passport.  (*Id.* ¶ 6.)  After examining Plaintiff's passport, which Plaintiff identifies as a "Passport to Africa," Officer Ripp found suboxone between the pages.  (*Id.* ¶¶ 7, 23.)  He arrested Plaintiff for "Criminal Possession of a Controlled Substance – in the 7th degree," (the "May 19 Arrest").  (*Id.* ¶ 8.)

During processing at the police station, Officer Ripp "took notice" of Plaintiff's two cell phones, an iPhone and a smartphone with a broken screen.  (*Id.* ¶ 9.)  During the processing of Plaintiff's property, the cell phone with the broken screen "allegedly alarmed with two . . . text messages," reading "how much for a half hour" and "how much for a short stay."  (*Id.* ¶ 10.)  Officer Ripp then contacted Officer Johnson from the SCPD's Human Trafficking Task Force Unit "about those messages."  (*Id.* ¶ 11.)

### ii.   May 29, 2018 arrest

On May 29, 2018, Plaintiff was again arrested after "allegedly failing to use the proper turn signal," (the "May 29 Arrest").  (*Id.* ¶ 12.)  "Police Officer Hemberger" and reporting Officer John Doe processed Plaintiff and logged Plaintiff's property, finding Plaintiff in possession of four cell phones.  (*Id.* ¶ 13.)  Officer Doe then contacted Officer Johnson, who "took possession" of Plaintiff's four cell phones and provided Plaintiff "with a receipt for the property of the cell phones, without returning the four . . . cell phones to [Plaintiff]."  (*Id.* ¶ 14.)

### iii.   June 11, 2018 search warrant affidavit[3]

On June 11, 2018, Officer Johnson provided a sworn affidavit to Judge Fernando Camacho in First District Court in Central Islip, New York, in support of a search warrant for Plaintiff's four cell phones.  (Pl.'s Opp'n ¶ 8.)  In the affidavit, Officer Johnson stated that on May 19, 2018, "one of [Plaintiff's] cellular telephones received numerous text messages that were visible on the home screen while the phone was locked.  The visible text messages consisted of communications from multiple phone numbers inquiring about sex services."  (*Id.*)  According to the affidavit, at an unspecified period of time, all four of Plaintiff's phones were returned to Plaintiff.  (*Id.*)  After this incident, in connection with the May 29 Arrest, Plaintiff's "cellular telephone[s] were taken as evidence and secure[d] with the [SCPD] property [s]ection."  (*Id.*)  Judge Camacho signed the search warrant.  (*Id.*)  "Following the signing [D]efendant

---

[3] Plaintiff fails to include these facts in his Amended Complaint and instead includes them in his opposition.  The Court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).  In addition, in light of Plaintiff's pro se status, the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition to the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations made by a pro se party in his papers opposing a motion to dismiss).

Johnson and a[n] Officer Popielowski responded to the SCPD computer crimes [unit] and delivered the signed search warrant, as well as [delivered] the phones to Detective Steve D'Agostino for download." (*Id.*)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein,* 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal,* 556 U.S. at 678). Although all allegations contained in the Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. Defendants' motion to dismiss

Defendants argue that the Court should dismiss Plaintiff's section 1983 claims because (1) they "cannot be maintained while his conviction remains extant," and (2) Plaintiff fails to allege any violations under either the Fourth or Fourteenth Amendment. (*See* Defs.' Mem. 4–14.)

### i.   Applicability of *Heck* abstention

Defendants argue that Plaintiff's claims "pursuant to both the Fourth and the Fourteenth Amendments must be dismissed because they are barred by the United States Supreme Court's holding in *Heck v. Humphrey*."  (Defs.' Mem. 13.)  In support, Defendants argue that since a verdict in Plaintiff's favor "would undermine the integrity of his criminal conviction," Plaintiff may not proceed unless he succeeds in setting the conviction aside.  (*Id.* at 13–14.)  Defendants note that Plaintiff does not address the fact that he was convicted and sentenced, and that his claim arises "out of conduct related to his arrest on sex trafficking charges."  (*Id.* at 14.)  In addition, Defendants contend that the "evidence acquired from the seizure and search (pursuant to a search warrant which is uncontested) of . . . [Plaintiff's cellular phones] was used against Plaintiff at trial," where Plaintiff was convicted of several counts of sex trafficking and promoting prostitution in Suffolk County, resulting in a sentence of twenty-five years with post-release parole supervision of twenty years.[4]  (Defs.' Reply in Further Support of Defs.' Mot. ("Defs.' Reply") 2, Docket Entry No. 38-13.)[5]

Plaintiff contends that the Court should deny Defendants' *Heck* argument because SCPD used false pretenses to unlawfully arrest him and seize his cell phones, while never indicting or convicting him of any charges based on the May 19 or May 29 Arrests.  (Pl.'s Opp'n ¶ 47.)

---

[4]  Following an Order from the Court, (Order dated Feb. 9, 2022), Defendants filed additional submissions pertaining to the issue of *Heck* abstention, largely reiterating the arguments from their reply and arguing that Plaintiff's cell phones "yielded evidence used in [Plaintiff's] criminal prosecution and subsequent trial, resulting in his convictions."  (Defs.' Letter dated Feb. 18, 2022, Docket Entry No. 51.)

[5]  Because Defendants' reply is not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

An individual convicted of a crime may not bring a section 1983 suit that "necessarily impl[ies] the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (discussing that plaintiffs may seek damages for "'wrong procedures, [but] not for reaching the wrong result,' [so long as that] procedural defect did not 'necessarily imply the invalidity of' the revocation" (quoting *Heck*, 512 U.S. at 482–83, 487)); *Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. 2017) (quoting *Heck*, 512 U.S. at 487); *Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017) (same). "The Supreme Court's decision in *Heck v. Humphrey* 'precludes the use of [section] 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions.'" *Stegemann v. Rensselaer Cnty. Sheriff's Office*, No. 20-CV-3316, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (quoting *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014)). In *Heck*, the Supreme Court noted that a section 1983 suit "may lie" even if a challenged action "produced evidence that was introduced in a state criminal trial resulting in the [section] 1983 plaintiff's still outstanding conviction." *Heck*, 512 U.S. at 487 n.7. The determination of the exception rests on "whether a prisoner's victory in a [section] 1983 suit would necessarily demonstrate the invalidity of his conviction or sentence; that a prisoner's success might be merely helpful or potentially demonstrative of illegal confinement is, under this standard, irrelevant." *Stegemann*, 2021 WL 5492966, at *2 (quoting *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007)).

Defendants contend that Plaintiff's arrest resulted from an investigation involving the "acquisition of a search warrant to search his cellular telephones which were seized in a search incident to his arrest on unrelated charges . . . and which yielded evidence used in the criminal

prosecution and subsequent trial, resulting in his conviction," (Defs.' Mem. 13), but the Court

does not have sufficient information before it, including state court records, to determine whether

a ruling in Plaintiff's favor would undermine his conviction.  The Court does not have access to

any documents or records from the state court proceedings, particularly those that would

illuminate the extent of the prosecution's evidence obtained by searching Plaintiff's cell phones,

and therefore cannot determine whether "judgment in favor of [Plaintiff] would necessarily

imply the invalidity of his conviction or sentence."  *Heck*, 512 U.S. at 487.  Based on the

minimal state records provided, the Court cannot "necessarily" determine that a ruling in

Plaintiff's favor would invalidate his conviction or sentence.  *Stegemann*, 2021 WL 5492966, at

*2 (quoting *McKithen*, 481 F.3d at 102); *see Spencer*, 523 U.S. at 17 (discussing that the

plaintiffs may seek damages for "'wrong procedures, [but] not for reaching the wrong result,' [so

long as that] procedural defect did not 'necessarily imply the invalidity of' the revocation"

(quoting *Heck*, 512 U.S. at 482–83, 487)); *see also Poventud*, 750 F.3d at 132 ("[M]any

violations of constitutional rights, even during the criminal process, may be remedied without

impugning the validity of a conviction.").

Accordingly, based on the limited record before the Court, the Court declines to consider

whether *Heck* abstention is appropriate, and considers Plaintiff's claims on the merits.

### ii.   Unlawful search and seizure claims

Defendants argue that police officers do not need warrants when there is a warrantless

search incident to a valid arrest and when they seize "evidence of criminal activity in plain view

if they are legitimately in the locations from which the evidence can be viewed."  (Defs.' Mem.

5.)  Regarding the claims against Officer Ripp from the May 19 Arrest, Defendants argue that

"Plaintiff makes no claim that Officer Ripp or any other officer for that matter retained

possession of his cell phones upon his release or that any actual 'search' of said phones occurred on May 19, 2018." (*Id.* at 8.)  Thus, any seizure of Plaintiff's phone was "clearly the result of a search of his property incidental to his arrest." (*Id.*)  As to Officer Johnson, Defendants contend that he was not one of the individuals who initially seized Plaintiff's phones during the May 29 Arrest; rather, the arresting officers contacted Officer Johnson after Plaintiff was arrested, and Officer Johnson "took custody of the already seized phones as evidence in a [s]ex [t]rafficking investigation and issued Plaintiff a [g]eneral [r]eceipt for said phones." (*Id.* at 8–9.)  Following this, Officer Johnson obtained a search warrant to search the data in the cell phone. (*Id.*)

Plaintiff argues that at the time of his May 19 Arrest, Officer Ripp deprived him of his constitutional rights by, "without a warrant or oath or affirmation[,] read[ing] two text messages from [Plaintiff's] cell-phone." (Pl.'s Opp'n ¶ 20.)  Plaintiff also argues that Officer "Ripp illegally searched [Plaintiff's] phone(s) without any authorization by the court." (*Id.* ¶ 27.)  As to the May 29 Arrest, Plaintiff argues that Officer Johnson "took custody of [Plaintiff's] four cell-phones against his will while detained in police custody, without consent, warrant, oath or affirmation and issued a receipt," (*id.* ¶ 28), and with "disregard of [Plaintiff's] rights."[6] (*Id.* ¶ 12.)

The Fourth Amendment protects individuals against unreasonable searches and seizures. *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022) (quoting U.S. Const. amend. IV). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's

---

[6] Plaintiff also argues that "Suffolk County Police Officers[] illegally arrested" Plaintiff on May 19, 2018 and May 29, 2018. (Pl.'s Opp'n ¶ 46.)  However, there are no facts that would permit the Court to infer that Plaintiff's May 19 Arrest, when Officer Ripp found a "sublingual tab of suboxone within [the] pages" of his passport, (*id.* ¶ 4), or that his May 29 Arrest due to a traffic violation, (*id.* ¶ 5), was illegal.

person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020) (collecting cases). "A 'seizure' of personal property occurs for purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that property." *Id.* (first citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); and then citing *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018)).

Pursuant to the Fourth Amendment, "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) ("Under the Fourth Amendment, warrants may be issued only 'upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" (quoting U.S. Const. amend. IV)); *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (same). "A warrantless search is 'per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'" *United States v. Aguiar*, 737 F.3d 251, 259 (2d Cir. 2013) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). As one of the exceptions to the warrant requirement, police officers may conduct a lawful search incident to arrest. *Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019) ("[A] search incident to an arrest 'constitutes an exception to the warrant requirement' the Fourth Amendment otherwise imposes." (quoting *Riley v. California*, 573 U.S. 373, 382 (2014))); *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (same); *Singletary v. Allen*, --- F. Supp. 3d ---, ---, 2022 WL 610621, at *8 (W.D.N.Y. Mar. 2, 2022) ("The Second Circuit . . . has held that a search incident to arrest may be lawful . . . if there was probable cause to make the arrest." (alterations in original) (quoting *United States v. Bell*, No. 19-CR-0717, 2020 WL 370342, at *2 (S.D.N.Y. Jan. 22, 2020))); *see*

*also United States v. Williams*, 568 F. App'x 25, 27 (2d Cir. 2014) (noting exception for "searches incident to arrest[, which] permits the police to search a lawfully arrested person and areas within his immediate control" (quoting *Smith v. Ohio*, 494 U.S. 541, 543 (1990))). Furthermore, a warrant is not required when a police officer briefly seizes a person and conducts a limited search for weapons, provided that the officer "reasonably suspects the person of being involved in criminal activity." *United States v. Swindle*, 407 F.3d 562, 563 n.2, 566 (2d Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 27, 30–31 (1968)); *United States v. Cruz*, No. 20-CR-321, 2021 WL 4482658, at *7 (E.D.N.Y. Aug. 13, 2021) ("[T]he presumption against warrantless searches and seizures is rebuttable in a variety of circumstances, such as one that constitutes a protective sweep — 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'" (quoting *Maryland v. Buie*, 494 U.S. 325, 337 (1990))), *report and recommendation adopted*, 2021 WL 4480667 (E.D.N.Y. Sept. 30, 2021).  Interactions with the police, particularly if they are extended, may evolve from limited stops or limited searches based on reasonable suspicion into arrests and searches incident to arrest.  *United States v. Restrepo*, 890 F. Supp. 180, 192 (E.D.N.Y. 1995); *see United States v. Vargas*, 369 F.3d 98, 101–02 (2d Cir. 2004).

"Under the plain-view exception" to the Fourth Amendment's requirement of a warrant for search and seizure, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).  However, "[i]t is important to distinguish 'plain view,' as used . . . to justify seizure of an object, from an officer's mere observation of an item left in plain view . . . [as] the latter generally involves no Fourth

Amendment search." *Horton v. California*, 496 U.S. 128, 133 n.5 (1990) (quoting *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983)). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Id.* at 133 (citing *Arizona v. Hicks*, 480 U.S. 321, 325 (1987)). Generally, "visual observation is no 'search' at all." *Kyllo v. United States*, 533 U.S. 27, 32 (2001); *United States v. Martinez*, No. 19-CR-172, 2019 WL 6683049, at *7 (D. Conn. Dec. 6, 2019) ("If law enforcement officers are lawfully present in an area, they are entitled to observe objects in plain view, since, in general, 'visual observation is no "search" at all.'" (quoting *Kyllo*, 533 U.S. at 32)).

Warrantless searches and seizures are also permissible during inventory searches, which involve "search[ing] the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police stationhouse incident to booking and jailing the suspect." *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *see United States v. Edwards*, 415 U.S. 800, 807 (1974) (upholding a warrantless search and seizure of defendant's clothing while he was lodged in a local jail after arrest and stating that a seizure is permissible "where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name . . . and at a later time searched and taken for use at the subsequent criminal trial"); *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (ruling that law enforcement officers taking a vehicle into custody after an arrest may search it and inventory its contents without need for a search warrant and "without regard to whether there is probable cause" (quoting *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008))); *United States v. Wells*, No. 20-CR-633, 2021 WL 5401494, at *3 (S.D.N.Y. Nov. 18, 2021) (ruling that seizure of defendant's cell phones were legal because his personal belongings, including his cell phones, were vouchered during an inventory search and finding that the NYPD was permitted to retain possession of cell phones pending issuance of

12

search warrant); *Llewellyn v. Gasparino*, No. 19-CV-489, 2019 WL 2248689, at *3 (D. Conn. May 24, 2019) ("Courts in this Circuit have held that the search and seizure of the contents of an arrestee's wallet is valid either as a search incident to an arrest or as an inventory search.").

### 1. Claim against Officer Ripp

Plaintiff's Fourth Amendment claim against Officer Ripp for unlawful search fails because no search took place when Officer Ripp observed the display of the messages on one of Plaintiff's phones while he was processing Plaintiff subsequent to the May 19 Arrest.[7]  Plaintiff does not allege any search of his cell phones occurred beyond Officer Ripp seeing those messages pop up during processing.  The "mere observation" of these text messages does not constitute a search.  *See Texas*, 460 U.S. at 738 n.4 ("[A]n officer's mere observation of an item left in plain view . . . generally involves no Fourth Amendment search." (citing *Katz*, 389 U.S. at 361 (Harlan, J., concurring))); *United States v. Brixen*, 908 F.3d 276, 282 (7th Cir. 2018) (finding no search when officer called defendant's cell phone and saw the notification because "the notification projected on the screen was plain to see, just as a ringtone would have been plain to hear"); *Martinez*, 2019 WL 6683049, at *7 ("Because he has not shown that any search occurred, [the district court found that] there [was] no basis to suppress . . . observations of [defendant's] cell phone screen (including the incoming call . . . ).").

---

[7]  While Plaintiff does not bring unlawful seizure claims against Officer Ripp, the Court notes that the cell phones were lawfully retained in connection with the lawful May 19 Arrest for Plaintiff's possession of suboxone, *see United States v. Williams*, No. 13-CR-50, 2014 WL 412526, at *10 (D. Vt. Feb. 3, 2014) ("Law enforcement's . . . seizure of [d]efendant's cell phones thus occurred in the course of a lawful search incident to arrest."), and during processing at the police station, *see Edwards*, 415 U.S. at 807.  *See United States v. Sharma*, No. 18-CR-340, 2019 WL 3802223, at *6 (S.D.N.Y. Aug. 13, 2019) ("[Defendant's] first iPhone was properly seized as part of a search incident to a valid arrest.").  Plaintiff does not allege that Officer Ripp retained possession of his cell phone upon release.

Plaintiff cites *Riley v. California*, 573 U.S. 373 (2014), where the Supreme Court found a violation of the Fourth Amendment when officers "examined the contents of the phone" to "look[] for evidence," including photographs.  *See Riley*, 573 U.S. at 379.  Unlike in *Riley*, however, Plaintiff does not allege that the officers looked through the contents of his cell phones on May 19, 2018, only that Officer Ripp "read" his text messages that appeared on screen during routine processing, and several weeks later after his second arrest, the SCPD obtained a search warrant in order to review the contents of Plaintiff's cell phones.  (Pl.'s Opp'n ¶ 8.)

Accordingly, Plaintiff fails to state a claim against Officer Ripp and the Court therefore dismisses Plaintiff's Fourth Amendment claim against Officer Ripp.

### 2.   Claim against Officer Johnson

Plaintiff's Fourth Amendment claim against Officer Johnson fails because the seizure that allegedly took place was lawful.  Plaintiff claims that "Defendant Johnson's warrantless seizure of four cellular telephones without [P]laintiff's consent, while [P]laintiff was detained in police custody, under police supervision was not reasonable."  (Pl.'s Opp'n ¶ 29.)  However, Officer Johnson received the cell phones from the arresting officers, who were entitled to "impound the personal effects that [were] with [Plaintiff] at the time [of arrest] to ensure the safety of those effects or to remove nuisances from the area," *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993); *United States v. Sharma*, No. 18-CR-340, 2019 WL 3802223, at *6 (S.D.N.Y. Aug. 13, 2019) ("[Defendant's] first iPhone was properly seized as part of a search incident to a valid arrest.").  The seizure of Plaintiff's cell phones when he arrived at the police station is also a valid result of a lawful inventory search.  *See Lafayette*, 462 U.S. at 643 (ruling that warrantless searches and seizures are permissible during inventory searches where officers "search the personal effects of a person under lawful arrest as part of the routine administrative

14

procedure at a police stationhouse incident to booking and jailing the suspect"); *Edwards*, 415

U.S. at 807 (upholding a warrantless search and seizure of defendant's clothing while he was

lodged in a local jail after arrest).  Officer Johnson then lawfully retained Plaintiff's cell phones

without a warrant prior to seeking a search warrant for the phones.  *See Riley*, 573 U.S. at 388

("[O]fficers could have seized and secured [the plaintiffs'] cell phones to prevent destruction of

evidence while seeking a warrant . . . . And once law enforcement officers have secured a cell

phone, there is no longer any risk that the arrestee himself will be able to delete incriminating

data from the phone."); *Smith*, 967 F.3d at 205 ("Police investigations commonly involve an

initial seizure of a person's property for purposes of conducting a search of the contents within it

. . . . [T]he Fourth Amendment allows the police to seize or secure the property without a warrant

provided that they follow up by applying to a judge for a warrant to search the property's

contents." (first citing *Illinois v. McArthur*, 531 U.S. 326, 332–34 (2001); and then citing *United

States v. Place*, 462 U.S. 696, 701 (1983))).[8]

Accordingly, the Court dismisses Plaintiff's Fourth Amendment claim against Officer

Johnson.

### iii.   Substantive and procedural due process claims

Defendants argue that Officer Ripp contacting Officer Johnson regarding the text

messages on May 19, 2018, does not constitute a "due process violation."  (Defs.' Mem. 9–10.)

In support, Defendants argue that there were no due process violations, because Plaintiff's

---

[8]  Plaintiff notes that the warrant was "obtained weeks after [Officer Johnson's] unlawful seizure."  (Pl.'s Opp'n ¶ 45.)  However, between the May 29 Arrest and June 11, 2018, when Officer Johnson applied for the warrant, only thirteen days had passed.  This constitutes "a reasonable period of time."  *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (finding a delay of eleven days for a warrant to be reasonable); *cf. Smith*, 967 F.3d at 211 (finding a month-long delay between seizure of a tablet and seeking a warrant to be unreasonable).

phones were returned to him following his May 19 Arrest and the "plain view observations Officer Ripp made of his incoming text messages which he conveyed to Officer Johnson constitute neither a substantive nor a procedural due process violation." (Defs.' Mem. 12.) As for the May 29 Arrest, Defendants argue that there can be no claim for the violations of Plaintiff's procedural due process rights because the Amended Complaint is "silent as to whether he ever asked for the return of the cell phones after his May 29, 2018 arrest following execution of the search warrant on the phones" and is "further silent on what process he was seeking that he did not receive and fails to provide facts once again to allow the Court to determine whether he received sufficient process with regard to the seizure." (Id.)

Plaintiff alleges that his substantive due process rights were violated when Officer Ripp initially contacted Officer Johnson about the text messages that he saw.[9] (Am. Compl. ¶ 20.) He contends that he was deprived of his property interest for the purposes of procedural due process when Officer Ripp "unreasonably read the contents of [his] text messages, in a search of [Plaintiff's] cell phone without probable or reasonable cause to do so, and again on May 29[], 2018, [when] Police Officer James Johnson . . . took [Plaintiff's] property, involuntarily," without his permission and did so intentionally while granting him a receipt. (Am. Compl. ¶ 22.)

### 1. Substantive due process

To state a claim for substantive due process, a plaintiff must allege that: (1) he had a valid property interest and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d

---

[9] Plaintiff does not specifically refer to his "substantive due process" rights in his opposition, although he does in the Amended Complaint. (*See generally* Am. Compl.)

16

778, 784 (2d Cir. 2007)); *see also Leder v. Am. Traffic Sols., Inc*., 630 F. App'x 61, 62 (2d Cir. 2015) (same).

"[T]he threshold inquiry in a substantive due process analysis is whether the property interest claimed rises to the level of a property interest cognizable under the substantive Due Process Clause." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998); *see 13391 Broadway LLC v. Village of Alden*, No. 19-CV-882, 2020 WL 7028601, at *13 (W.D.N.Y. Nov. 30, 2020) (dismissing substantive due process claim where plaintiff did not have an enforceable property interest) (quoting *DLC Mgmt. Corp.*, 163 F.3d at 132).  Property interests "may take many forms." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972).  "Property interests protected by due process are neither created nor defined by the Constitution[,] '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994) (quoting *Bd. of Regents*, 408 U.S. at 577); *see Calvey v. Town Bd. of North Elba*, No. 20-CV-711, 2021 WL 1146283, at *9 (N.D.N.Y. Mar. 25, 2021) (same) (quoting *Martz*, 22 F.3d at 29); *Lipsman v. Cortes-Vazquez*, No. 21-CV-4631, 2021 WL 5827129, at *2 (S.D.N.Y. Dec. 7, 2021) (dismissing substantive due process claims where plaintiff failed "to identify any valid liberty or property interest").

Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . [substantive due process] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Harlen Assocs. v. Inc. Vill. of*

*Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258,

263 (2d Cir. 1999)); *Natale*, 170 F.3d at 262 ("For state action to be taken in violation of the

requirements of substantive due process, the denial must have occurred under circumstances

warranting the labels 'arbitrary' and 'outrageous.'" (collecting cases)); *Phillips v. County of*

*Orange*, 894 F. Supp. 2d 345, 381 (S.D.N.Y. 2012) ("At most, [the plaintiffs] have claimed that

[d]efendants were negligent in their handling of the abuse investigation, but they have not

alleged sufficient facts to support an inference that [the defendants'] acts were malicious, such

that their actions could 'shock the conscience.'" (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*,

654 F.3d 267, 276 (2d Cir. 2011))).  The government must have taken an "action that is arbitrary,

conscience-shocking, or oppressive in a constitutional sense." *Cunney v. Bd. of Trs. of Vill. of*

*Grand View*, 660 F.3d 612, 626 (2d Cir. 2011). "It is not enough that the government act be

'incorrect or ill-advised;' it must be 'conscience-shocking.'" *Cox*, 654 F.3d at 275 (quoting

*Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)); *see also Cunney*, 660 F.3d at

626 (noting that substantive due process does not apply to "government action that is incorrect or

ill advised"); *Phillips*, 894 F. Supp. 2d at 379 ("Conduct that is merely 'incorrect or ill-advised'

is insufficient to state a claim." (quoting *Cox*, 654 F.3d at 275)). "Only the most egregious

official conduct can be said to be arbitrary in the constitutional sense and therefore

unconstitutional." *Cox*, 654 F.3d at 275 (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d

Cir. 1999)).

      Plaintiff fails to allege a property interest.  There was no deprivation of property involved

in Officers Ripp's and Johnson's alleged conversation about the text messages, as there are no

"existing rules or understandings" under state law or otherwise, that would apply to these facts.

*Martz*, 22 F.3d at 29; *see Reno v. Flores*, 507 U.S. 292, 302 (1993) ("Substantive due process

analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992))); *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 226 (N.D.N.Y. 2020) (quoting *Reno*, 507 U.S. at 302). Moreover, simply speaking to one another about the messages that Officer Ripp observed does not provide a basis for the Court to infer that Defendants infringed on Plaintiff's property interest in a manner that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012); *see Longinott v. Bouffard*, No. 11-CV-4245, 2012 WL 1392579, at *5 (S.D.N.Y. Apr. 17, 2012) ("[T]he Supreme Court has repeatedly emphasized that only the most egregious official conduct can be said to violate substantive due process." (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998))). Officer Ripp's decision to reach out to Officer Johnson's human trafficking unit was rational in light of the content of the messages. The Court does not find any egregious conduct in the officers' actions.

Accordingly, the Court dismisses Plaintiff's substantive due process claims against Defendants.

### 2. Procedural due process claims

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 196 (2d Cir. 2020) (Chin, J., concurring in part and dissenting in part) (quoting *Mathews*, 424 U.S. at 332). The Fourteenth Amendment's Due Process Clause

protects persons against deprivations of life, liberty, or property without due process of law, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)). "To plead a violation of procedural due process, a plaintiff must plausibly allege that [s]he was deprived of property without constitutionally adequate pre- or post-deprivation process." *Gentleman v. State Univ. of N.Y. Stony Brook*, No. 21-CV-1102, 2022 WL 1447381, at *2 (2d Cir. May 9, 2022) (alteration in original) (quoting *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)). "Thus, to plausibly state a claim, 'a plaintiff must first identify a property right, second show that the government has deprived h[er] of that right, and third show that the deprivation was effected without due process.'" *Id.* (quoting *J.S.*, 714 F.3d at 105) (alteration in original); *see Reyes v. Fischer*, 934 F.3d 97, 106 (2d Cir. 2019) (recognizing that a court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient" (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011))).

Following the Second Circuit's decisions in *Butler v. Castro*, 896 F.2d 698 (2d Cir. 1990), and *Alexandre v. Cortes*, 140 F.3d 406, 414 (2d Cir. 1998), an arrestee can succeed on a procedural due process claim by demonstrating: "(1) that the City arrested him and seized his property; (2) that it did not give him a voucher with the constitutionally-required notice printed on it; (3) that it did not otherwise notify him of the procedures he could follow to reclaim his property; and (4) that he was deprived of the property as a result." *Frith v. City of New York*, No. 07-CV-5899, 2011 WL 3477083, at *3 (S.D.N.Y. July 7, 2011); *see Chunn v. Amtrak*, No. 14-CV-6140, 2015 WL 10520663, at *7 (S.D.N.Y. Aug. 6, 2015) (same) (quoting *Contant v. City of New York*, No. 09-CV-2851, 2012 WL 1158756, at *6–7 (E.D.N.Y. Mar. 16, 2012),

*report and recommendation adopted*, 2012 WL 1165623 (E.D.N.Y. Apr. 9, 2012)); *Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) (same).

Plaintiff fails to allege procedural due process violations.  There is no precedent or law that provides that Officer Ripp's observations of Plaintiff's cell phone notifications in connection with the May 19 Arrest constitute a property interest, or that Plaintiff's property interest in his cell phone was infringed by Officer Ripp observing the notifications.  As to the May 29 Arrest, Plaintiff alleges that he received a receipt for his belongings, and has submitted property receipts attached to his Amended Complaint.  (Am. Compl. ¶ 14; *see* Property Receipts, annexed to Am. Compl. as Ex. 3, Docket Entry No. 9.)  Plaintiff does not allege that he was not given proper notice of post-deprivation state law remedies or that these remedies were inadequate and thus fails to meet his burden of showing that he was "deprived of [his property interest] without due process," *McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001); *see Hays v. City of New York*, No. 14-CV-10126, 2017 WL 782496, at *4 (S.D.N.Y. Feb. 28, 2017) (dismissing plaintiff's due process claims that "[d]efendants unlawfully retained some of her personal property after the arrest" where plaintiff "concede[d] that she was given vouchers for her property after she was released and [did] not allege that those vouchers were legally insufficient"); *cf. Frith*, 2011 WL 3477083, at *3 ("Plaintiff claims that the City seized his property and then disposed of it, without notifying him of the procedures he could follow to reclaim it, in violation of his due process rights under the Fifth and [Fourteenth] Amendments.").  To the extent Plaintiff believes that he has not received proper notice of the appropriate remedies or that the remedies were inadequate, he may amend his procedural due process claim and file a third amended complaint with appropriate allegations to support such a claim.

Accordingly, the Court dismisses Plaintiff's procedural due process claims against Defendants but grants Plaintiff leave to amend this claim.

### iv.   Equal Protection claims

Defendants argue that Plaintiff cannot assert an Equal Protection claim, as there are no facts to support Plaintiff's claim that he was "discriminated against" on the basis of his African passport.  (Defs.' Mem. 13.)

Plaintiff alleges that his Equal Protection rights were violated based on his "membership [Passport to Africa]," and he suffered discrimination as a result.  (Am. Compl. ¶ 23.)

To state a claim for Equal Protection, a plaintiff can proceed on both a selective enforcement and a class-of-one theory.  *See Jordan v. N.Y.C. Bd. of Elections*, 816 F. App'x 599, 603–04 (2d Cir. 2020).  Where a plaintiff is treated unequally compared with others similarly situated, and when such treatment is based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," the facts give rise to a claim of selective enforcement.  *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)); *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609– 10 (2d Cir. 1980)); *see also Bush v. City of Utica,* 558 F. App'x 131, 134 (2d Cir. 2014) (holding that plaintiffs stated an Equal Protection claim when they alleged that the fire department had a policy of not entering low-income properties).  In addition, Equal Protection claims based on a so-called "class of one" theory involve claims "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per

22

curiam) (first citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989)).

Plaintiff's conclusory allegations are insufficient to constitute an Equal Protection violation under either selective enforcement or class-of-one theories. Plaintiff's contention that he was discriminated against on the basis of his passport is not supported by any facts in the Amended Complaint, and Plaintiff fails to provide any further arguments in his opposition.

Accordingly, the Court dismisses Plaintiff's Equal Protection claims against Defendants.

**c.   Leave to amend the Amended Complaint**

Plaintiff argues that he should be permitted to amend the Amended Complaint to add Officer James Murphy as a Defendant for "supervising the seizure," and add Officer Johnson's affidavit in connection with the search warrant as "evidence of deprivation." (Pl.'s Mot. 4.) Plaintiff's SAC reiterates the claims discussed above and adds Officers John Doe, "Hemberger," and James Murphy as Defendants. (*See* SAC ¶ 4.) Plaintiff alleges that Officers Doe and Hemberger were the arresting officers for the May 29 Arrest, and they "illegally provided [Plaintiff's] property to [their] fellow officer, who unlawfully seized [Plaintiff's] four cell phones" and later released him without his cell phones. (*Id.* ¶¶ 15, 47.) Officer Murphy was the one who "supervised the seizure of [Plaintiff's] four cell phones," (*id.* ¶ 59), and who signed the property invoice, (*id.* ¶ 7).

Defendants argue that any claims "against any [D]efendants beyond those asserted against James Johnson and Steven Ripp in the Amended Complaint for incidents that occurred prior to Plaintiff's filing of the proposed Second Amended Complaint on August 27, 2021 are time-barred as the statute of limitations has passed." (Defs.' Resp. 2.) Further, Defendants argue that Officer Murphy was not personally involved, and cannot be liable under section 1983. (*Id.*)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad*., 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc*., 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc*., 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Plaintiff's SAC does not remedy the deficiencies outlined above in the claims brought against Officers Ripp and Johnson. (*See* SAC ¶ 12 (claiming that Officer Ripp violated

Plaintiff's constitutional rights while reading his text messages in violation of the Fourth and Fourteenth Amendments); *id.* ¶ 14 (claiming that Officer Johnson took Plaintiff's cell phone while he was detained and issued a general receipt in violation of the Fourth and Fourteenth Amendments).) Plaintiff's claims against the proposed new Defendants fail as well. Insofar as Plaintiff brings claims against Officers Doe and Hemberger for seizing Plaintiff's cell phones and "provid[ing]" them to Officer Johnson, (*id.* ¶ 13), before releasing him without his cell phones, (*id.* ¶ 15), these claims fail because seizures incident to arrest are permissible. *See United States v. Chierchio*, No. 20-CR-306, 2022 WL 523603, at *9 (E.D.N.Y. Feb. 22, 2022) (stating that the police can "search a lawfully arrested person and areas within his immediate control" and seize evidence obtained from such searches) (first quoting *Smith v. Ohio*, 494 U.S. 541, 543 (1990); and then citing *Utah v. Strieff*, 579 U.S. 232, 243 (2016)); *United States v. Corbett*, No. 20-CR-213, 2021 WL 4480626, at *4 (E.D.N.Y. Sept. 30, 2021) (noting that *Riley* permits the "warrantless seizure of a cell phone incident to an arrest, but requires a warrant to search it" (citing *Riley*, 573 U.S. at 396)). The SCPD also had the right to keep Plaintiff's cell phones as evidence as they applied for a search warrant. *See Smith*, 967 F.3d at 205 ("[T]he Fourth Amendment allows the police to seize or secure the property without a warrant provided that they follow up by applying to a judge for a warrant to search the property's contents.").

Plaintiff's claim against Officer Murphy solely on the basis of supervising the alleged unreasonable seizure also fails because Plaintiff fails to provide any factual allegations to support Officer Murphy's personal involvement, rather than his alleged supervisory liability, which cannot sustain a section 1983 claim. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (ruling that "there is no special rule for supervisory liability," and stating that to find a state official liable under section 1983, "a plaintiff must plead and prove 'that each

[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution'" (quoting *Iqbal*, 556 U.S. at 676)).  Being in the chain of command is not sufficient to satisfy personal involvement as the "violation must be established against the supervisory official directly."  *Id.*; *see Florence v. Seggos*, No. 21-834, 2022 WL 2046078, at *3 (2d Cir. June 7, 2022) ("To state a claim under section[] 1983 . . . the complaint must plausibly allege [the d]efendants' 'personal involvement' in the wrongful acts at issue." (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004))); *Dubois v. Beaury*, No. 21-CV-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))); *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *33 (S.D.N.Y. Mar. 26, 2021) ("[I]n light of *Tangreti*, [the p]laintiff must establish that [the defendant] committed a constitutional violation through his own conduct, rather than through his supervision of [others].").  Thus, Plaintiff's allegations in the proposed Second Amended Complaint fail to state claims against all three proposed new Defendants.[10]

---

[10]  Plaintiff also claims that his property voucher was issued without an "oath or affirmation," (SAC ¶ 27), which allegedly violated his constitutional rights.  However, Plaintiff has not provided case law, nor is the Court aware of any, that mandates an oath or affirmation to accompany a property voucher; rather, courts have considered the fatal flaw to be when police officers have failed to provide property vouchers.  *See, e.g.*, *Kneitel v. Danchuk*, No. 04-CV-0971, 2007 WL 2020183, at *6 (E.D.N.Y. July 6, 2007) (finding that plaintiff was deprived of his property where it was "undisputed that he was not provided with a voucher for [his car] until . . . a few months after the car was sold at auction").

Moreover, Plaintiff also claims that he was deprived of his constitutional rights on October 15, 2018, when Officer Johnson "falsely stated" in his search warrant affidavit that the cell phones observed during Plaintiff's May 19 Arrest were the same cell phones eventually seized, (SAC ¶ 22), and that his rights were violated at his probable cause hearing on September 10, 2019, where the Defendants were "all missing as material witnesses."  (*Id.* ¶ 16.)  The determination of whether Plaintiff's search warrant was correctly issued or supported by

Accordingly, the Court denies Plaintiff's motion for leave to amend the Amended Complaint, but grants Plaintiff leave to amend his procedural due process claim and file a third amended complaint as to that claim only.  The third amended complaint must be filed within thirty days of the date of this Memorandum and Order and will completely replace the Amended Complaint and SAC and must stand on its own without reference to the prior complaints and must contain all of the claims Plaintiff seeks to pursue.  The third amended complaint must be captioned "Third Amended Complaint" and bear the same docket number as this Memorandum and Order.  If Plaintiff elects not to file a third amended complaint or fails to file it within thirty days of this Memorandum and Order, the Court will direct the Clerk of Court to enter judgment dismissing the case for the reasons stated above.

---

probable cause, and whether Plaintiff's rights were violated at his probable cause hearing, are barred by the doctrine of collateral estoppel.  "Settled authority establishes that where . . . a state court has determined that the challenged search warrant or warrantless seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action."  *DeFranco v. Town of Irondequoit*, No. 06-CV-6442, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (citing *Allen v. McCurry*, 449 U.S. 90, 103–04 (1980)); *Fabrikant v. French*, 691 F.3d 193, 204 (2d Cir. 2012) (affirming the district court's decision that the plaintiff was "barred from relitigating [probable cause claims] while prosecuting her federal constitutional claims under [section] 1983" because the state court had already "determined that the search warrant was supported by probable cause"); *see Iverson v. Costello*, No. 17-CV-365, 2020 WL 4926293, at *1 (W.D.N.Y. Aug. 21, 2020) (quoting *DeFranco*, 2009 WL 2957813, at *4).

Finally, in light of its consideration of the merits of the SAC, the Court declines to consider Defendants' statute of limitations argument.

### III.  Conclusion

For the reasons stated above, the Court grants Defendants' motion and dismisses the Amended Complaint and denies Plaintiff's motion for leave to amend the Amended Complaint as filed.  The Court grants Plaintiff leave to file a third amended complaint regarding his procedural due process claim within thirty days of the entry of this Memorandum and Order.

Dated:  September 13, 2022
       Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

28